```
             UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                              CRIMINAL ACTION NO. 2:13-00008

**GEORGE MICHAEL PUSKAS II**


MEMORANDUM OPINION AND ORDER


This matter is before the court on the defendant's Motion to Suppress Evidence, filed on April 9, 2013, which seeks to suppress the items seized upon the execution of two search warrants on April 6, 2012.  According to the defendant those items include the hard drive for a laptop computer and a 4 GB flash drive from which images of a minor engaged in sexually explicit conduct were subsequently forensically retrieved.  The hard drive for the laptop contained such images in thumbnail size.  The unallocated space of the 4 GB flash drive contained such images even though they had been previously deleted by the user.  The defendant contends that the search warrants lacked probable cause for their issuance.

The applications for the two search warrants are in near identical terms except that one of them seeks a search warrant for the defendant's residence while the other is for the

defendant's place of employment at the Ripley Police Department, both located in Ripley, West Virginia. Both are specified as "related to a violation of 18 U.S.C. § 2251 Production of child pornography."

The application for each search warrant is supported by the affidavit of Sgt. David C. Eldridge of the West Virginia State Police. The affidavits are also in near identical terms. Sgt. Eldridge is a digital forensics analyst who has conducted over 250 forensic examinations of digital devices and related digital media. Aside from being assigned to the West Virginia State Police's digital forensic unit, he has been assigned as an investigator to the West Virginia Internet Crimes Against Children Task Force since 2006. He is also assigned as an investigator to the Federal Bureau of Investigation's West Virginia Cyber Crimes Task Force. He has specifically dealt with the investigation of child sexual exploitation by the use of the Internet and digital-based technology involving the possession, distribution, transportation and production of child pornography. He has participated in the execution of more than 35 search warrants involving the search and seizure of digital equipment and digital data.

Sgt. Eldridge takes note in his affidavits that the search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected or encrypted files.  He further notes that the procedure employed includes searching for and attempting to recover any deleted, hidden or encrypted data.

The affidavits are based in significant part on the interview of the victim by West Virginia State Police Sergeants Schoolcraft and Clemens on September 27, 2011.  The victim, an 18-year old female, related that she had been sexually exploited as a minor by the defendant and was then being stalked by him.

I.

Paragraph 34 of the affidavits of Sgt. Eldridge states that the victim reported that she and the defendant, who had been her soccer team coach, engaged in sexual intercourse almost daily from March 2010 to April 2011, during a period when she would have been 16 and 17 years of age.  She further reported that the defendant "took hundreds of digital photographs and several videos of the two of them engaged in sexual activities at different locations, including his residence."  She said he used the digital camera issued to him by the Ripley Police

Department to take the photographs and he typically kept the camera with him and also took it inside his residence. She added that the defendant "told her that he stored the photographs of the two of them engaged in sexual activities on his work laptop computer."

In paragraph 36 it is stated that "the victim advised that during the period that she and Puskas were sexually active, he would drive her to a Planned Parenthood Clinic in Parkersburg, West Virginia, so that she could receive birth control injections." In paragraph 38, it is stated that, after the victim broke off the relationship in April 2011 and began dating others, the defendant began harassing her and "e-mailed her copies of the nude pictures and videos he had taken of them when they were sexually active."

The defendant complains that the affidavits fail to refer to "sexually explicit conduct", a term that by definition in the child pornography statute includes sexual intercourse. 18 U.S.C. § 2256(2)(A). However, in the context in which the terms "sexual activities" and "sexually active" are used in the affidavits, it is apparent that, in each instance, reference is being made to acts of sexual intercourse, thereby constituting sexually explicit conduct.

Moreover, the court observes that when the term sexually active is used today, it is commonly understood to refer to one who is actively engaged, at least on occasion, in sexual intercourse.

## II.

When the search warrants were issued on April 5, 2012, the photographs and videos of sexual activity sought by the Eldridge affidavits would have been created over a period of at least a year that ended in April 2011 when the victim broke off relations with the defendant. The one year lapse of time thereafter, from April 2011 to April 2012 when the search warrants were sought, did not make the request stale. As a generality, the affidavits at paragraph 30 aptly state:

> These offenders view their child pornographic materials as valuable commodities, sometimes even regarding them as prized collections, which they rarely, if ever, destroy. Subsequently, these offenders often go to great lengths to conceal and protect their illicit collections from discovery, theft or damage.

While recognizing that time is a critical element in probable cause determinations, courts treat delay in obtaining search warrants in child pornography cases as less consequential inasmuch as child pornographers are known to retain their cache

for long periods of time.  See, e.g., <u>United States v. Richardson</u>, 607 F.3d 357, 370 (4th Cir. 2010) (four months); <u>United States v. Morales-Aldahondo</u>, 524 F.3d 115, 119 (1st Cir. 2008) (three years); and <u>United States v. Lacy</u>, 119 F.3d 742, 746 (9th Cir. 1997) (ten months).  The court finds that the search warrant requests in this case were timely.

III.

The victim gave a believable account of her sexual relationship with the defendant and his production of photographs and video images of their sexual activities.  Sgt. Eldridge was justified in treating her statements as credible inasmuch as she could expect at some point to be called to account for the truthfulness of at least some of her particularly pertinent charges.  That would include her statement that the defendant "told her that he stored the photographs of the two of them engaged in sexual activities on his work laptop computer, which he kept locked in his desk at the Ripley Police Department."  It would also include her statement that the defendant's roommate Chad Walters, a 911 Dispatcher in Jackson County, and Ripley Police Officer Andy Williams were aware that she and the defendant were having sex. In addition, she had informed Officer Williams in August 2011,

that, after she broke off the relationship in April 2011, the defendant had harassed her and threatened to kill her if she dated anyone else, following which Officer Williams told the defendant to cease harassing her.  It is further to be noted that the victim's account of events appears to have been unsolicited and uncoached.  It also cast, in some detail, events of an embarrassing nature.

Sgt. Eldridge met with the victim on November 30, 2011, and she contacted him again on December 7, 2011, with respect to information relating to the defendant's online accounts.  She had earlier advised that she and the defendant communicated with each other by using Facebook, email and text messaging.  The victim provided Sgt. Eldridge on the two occasions just noted with the names of two Yahoo e-mail accounts and at least one Microsoft or Hotmail e-mail account, as being on-line accounts used by the defendant.  Sgt. Eldridge, in February 2012, obtained search warrants to search the contents of those accounts.  The e-mail addresses for those accounts are as follows:

soccer_14@hotmail.com
soccer_14@yahoo.com
ourrm219@yahoo.com

He found in response that all of the contents of all of them, including account activation or "welcome" e-mail, had been deleted. He followed up with representatives of Microsoft and Yahoo to confirm the complete absence of any content in those email accounts[1]. Sgt. Eldridge understandably found it suspicious, as stated in his affidavits, that all of the contents of each of those email accounts would have had even their account activation or welcome e-mails deleted. It appears to the court that the wiping of those e-mail accounts infuses a degree of corroboration that would indicate the accounts at one time contained prohibited materials of the sexually explicit kind related by the victim.

IV.

The defendant faults Sgt. Eldridge with respect to his failure to advise the magistrate judge that the victim had failed to turn over to him her cell phone to allow the West Virginia State Police to retrieve any text messages and pictures sent or received by that phone. The defendant labels this a <u>Franks</u> violation entitling him to a <u>Franks</u> hearing with respect to that omission. The court finds the defendant has failed to make a substantial preliminary showing that would entitle him to

---

[1] At the motions hearing in this case on April 23, 2013, counsel for the defendant requested an examination of Sgt. Eldridge respecting the content of the first two of the above-listed accounts. The court took the request under advisement. Inasmuch as nothing was found in any of these accounts, the court declines the request.

8

a *Franks* hearing in that there is no demonstration that affiant made a false statement knowingly and intentionally or with reckless disregard for the truth, nor is it shown that inclusion of the omitted information in the affidavit would defeat probable cause. Consequently, the request for a *Franks* hearing is denied. See *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

V.

So it is that a neutral and detached judicial officer called upon to decide whether the Eldridge affidavits supported issuance of the search warrants for child pornography would conclude, as did Sgt. Eldridge, that (1) the primary object of the search was the location of photographs and videos depicting the defendant and the minor victim engaged in acts of sexual intercourse constituting sexually explicit conduct, (2) the request for the search warrants was timely, and (3) the uncorroborated statements of the victim were sufficient to establish probable cause.

Alternatively, the government contends, and the court agrees, that the extensive affidavit supporting each of the warrants issued was not so lacking in indicia of probable cause as to render official belief in the existence of probable cause entirely unreasonable. Further, it is not suggested that the

affiant based his applications for the warrants on knowing or reckless falsity, or that the magistrate judge issuing the warrants abandoned her role as a detached decision maker.  Nor is it shown that the warrants were so facially deficient  that the executing officers could not reasonably have presumed that the warrants were valid.  Consequently, the searches executed by the officers under those warrants are deemed made in good faith. <u>United States v. Leon</u>, 468 U.S. 897 (1984).

VI.

The government's contention is undisputed that the laptop computer and flash drive seized at the Ripley Police Department were located on or in the unlocked desk assigned to the defendant and that those items are owned by the City of Ripley.

The Employee Handbook of the City of Ripley, effective January 2009, specifies as follows:

> The City of Ripley may provide you access to computers, computer files, the email system, and software.  You should not use a password, access file, or retrieve any stored communication without authorization. To make sure that all employees follow this policy, we may monitor computer and email usage.
>
> We do not allow employees to use computers and email in ways that are disruptive, offensive to others, or harmful to morale.

10

Inasmuch as that which was seized at the Ripley Police Department constitutes property of the City and inasmuch further as the City retained the right to monitor computer and email usage, the defendant had no reasonable expectation of privacy in the seized items.  As a result, those items were subject to seizure even without the authority of a search warrant.

## VII.

Accordingly, the motion to suppress is denied as to all of the property seized at the defendant's residence and the Ripley Police Department.  The motion is denied as well to the statement given by the defendant following <u>Miranda</u> warnings immediately after the seizures.

The Clerk is directed to forward a copy of this memorandum opinion and order to the defendant and all counsel of record.

DATED:  May 1, 2013

John T. Copenhaver, Jr.
United States District Judge